UNITED STATES DISTRICT COURT Eastern District of Kentucky
EASTERN DISTRICT OF KENTUCKY        F I L E D
LONDON

AUG 1 7 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-451-GWU

JEFFREY PHILPOT,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                            DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 CFR 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to

1

        Step 4. If no, the claimant is not disabled. <u>See</u> 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 CFR 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 CFR 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.   If there is, we then examine:   (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Philpot

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d.1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

Philpot

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.   Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Jeffrey Philpot, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of disorders of the aortic valve, disorders of the back, and "discogenic degenerative disease." (Tr. 16).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits.  (Tr. 18-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional impairments.  (Tr. 229).  He: (1) could only occasionally reach overhead with the non-dominant left arm, but had no limitation on the use of the right arm; and (2) could have no concentrated exposure to whole body vibration.   (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 230).

7

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to left knee and left elbow pain, low back pain, and heart problems. (Tr. 64). He testified that he stopped working at his last job as a house painter some time in 2001. (Tr. 198-9).

Much of the medical evidence in the transcript dates from before the plaintiff stopped working.

The evidence confirms that the plaintiff had evaluations for heart abnormalities in 1999, and made some trips to the emergency room, although his chest pain was eventually diagnosed as non-cardiac. (Tr. 120). An echocardiogram showed left atrial enlargement, normal left ventricular contractility with ejection fraction of 55 percent, the possibility of a bicuspid aortic valve "with normal excursion," mild aortic insufficiency, and no pericardial effusion. (Tr. 112, 118). A cardiologist, Dr. A. Anand, reassured the plaintiff that his bicuspid aortic valve should not cause any chest pain or shortness of breath and, although he cautioned that the condition would need to be monitored for possible progression of regurgitation or early stenosis, Dr. Anand did not impose any functional restrictions. (Tr. 134, 137). There is no evidence that the plaintiff sought any treatment for this condition after his alleged onset date.

8

Philpot

Dr. William Brooks, a neurosurgeon, apparently evaluated the plaintiff for lower back problems at one point, but the only record of this is a CT scan of the lumbosacral spine from September, 1996 showing a central midline bulging at L5-S1, and degenerative arthritic changes of the posterior facet joints. (Tr. 193). The only office note from Dr. Brooks is dated September 16, 1999, and states that he had seen Mr. Philpot in the past for back and neck injuries and injuries to his left shoulder, but he did not have any conditions that surgery could help. (Tr. 101). He was referring the plaintiff to other physicians for evaluation for a possible rotator cuff injury, pain management, and "occupational rehabilitation and determination of impairment." (Id.).

The plaintiff did see one of the physicians mentioned by Dr. Brooks. Dr. Paul Forberg examined Mr. Philpot on September 30, 1999. (Tr. 102). The plaintiff stated that he had dislocated his shoulder and injured his elbow in a motor vehicle accident a year earlier. (Id.). Dr. Forberg's examination did show some reduction in the left shoulder range of motion. X-rays of the shoulder were within normal limits, however, while an elbow x-ray showed a non-union of a medial and lateral epicondyle fracture. (Tr. 103). Dr. Forberg recommended physical therapy and prescribed Celebrex. (Tr. 102). However, no functional restrictions were given, and this was approximately two years before the plaintiff stopped working.

Brief notes from the East Bernstadt Medical Clinic indicated that the plaintiff was diagnosed with a left trapezius muscle strain in April, 2000, and given Celebrex,

9

Philpot

Robaxin, and Tylenol No. 3. (Tr. 139). Apparently, he did not return to this clinic until July, 2001, when he was requesting Lorcet Plus and left the office when the medication was refused. (Id.).

Dr. Bobby J. Kidd conducted a consultative examination of the plaintiff on September 18, 2001. (Tr. 141). He found that the plaintiff had a normal gait and, despite his complaints of knee pain, did not require an ambulatory aid, was stable at station, and appeared comfortable sitting and supine. (Tr. 142). The heart had a regular sinus rate and rhythm, although there was a very loud systolic murmur. (Id.). There was no clubbing, cyanosis, or edema of the extremities. (Tr. 143). Mr. Philpot's grip was equal and he was able to write and pick up coins with either hand without difficulty. Dr. Kidd found no tenderness or spasm in the cervical spine, and noted that the shoulders and wrists were non-tender and had a normal range of motion, but the left elbow lacked 20 degrees of being able to flex normally. (Tr. 143-4). The lumbar spine and leg examinations were normal, with Dr. Kidd noting that Mr. Philpot could stand on one leg at a time without difficulty, walk on his heels and toes, perform tandem gait, and squat. (Tr. 144). Dr. Kidd did not reach any functional capacity conclusions, but noted that the plaintiff had "significant findings on examination," that an "x-ray" showed facet arthritis and "deteriorating disc disease" of the back, that there was documentation of cardiac aortic valve insufficiency, and that the plaintiff was unable to fully extend his left elbow. (Tr. 145).

10

Philpot

Two non-examining state agency physicians reviewed the record at this point and concluded that the plaintiff was capable of medium level work with no non-exertional restrictions.  (Tr. 147-56, 172-80).  One of the physicians, Dr. John Rawlings, commented that the plaintiff's only real "documented" impairment was a bicuspid aortic valve insufficiency and, in view of the physical findings, felt that the plaintiff's allegation that he could not lift was only partially credible, and his allegation that he could not bend or squat was not considered credible since he had a normal gait, range of motion, and neurological examination, and also a negative x-ray of the left knee.  (Tr. 149, 140).

Subsequently, the plaintiff submitted evidence of three visits to Dr. Robert Hoskins in 2001 and 2002, primarily for left arm pain.  (Tr. 187-91).  The only actual physical findings listed by the physician came on a visit of February 4, 2002, when he noted tenderness in the left arm and diagnosed a "strain" of the left elbow along with "traumatic arthritis" of this joint.  (Tr. 189).

Records from a Dr. V. Santelices show that the plaintiff was seen between September and November, 2002 for complaints of low back pain radiating in the right hip.  (Tr. 184).  The physician diagnosed a sprain or strain of the lumbar spine and muscle spasm, and recommended physical therapy and an MRI.  (Tr. 184).  On the last visit, November 12, 2002, Dr. Santelices indicated that the plaintiff had an "exaggerated pain threshold," and suggested using Vioxx and "referring out."  (Tr. 182).

11

Philpot

In view of the fact that no treating or examining source listed any functional restrictions, the conclusions of state agency physicians that the plaintiff could perform medium level work and had no non-exertional restrictions are uncontradicted. Nevertheless, the ALJ gave the plaintiff the benefit of the doubt, and restricted him to only light level exertion with limitations on the use of the left arm and avoidance of vibration.

The plaintiff argues on appeal that the ALJ did not give sufficient weight to findings of a restricted range of motion in the left arm, but in the absence of any opinion from a medical source, the ALJ's decision is well supported by substantial evidence.

The decision will be affirmed.

This the _____/ 7_____ day of August, 2005.

G. WIX UNTHANK
SENIOR JUDGE

12